AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of New York

United States of America
v.
JAY SUNILBHARTHI GOSWAMI

*Defendant(s)*

Case No. 26-MJ-579

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 8/1/2025-present in the county of Monroe in the Western District of NY, and elsewhere, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1343 and 1349 | Wire Fraud and Conspiracy to Commit Wire Fraud |
| 18 USC 1956(a)(1)(B)(i), 1956(h), and 1957 | Money Laundering and Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

See the attached affidavit of Internal Revene Service, Criminal Investigation (IRS-CI) Special Agent Brendan K. Miller, which is incorporated herein by reference

☑ Continued on the attached sheet.

Brendan Miller

*Complainant's signature*

Brendan K. Miller, Special Agent, IRS-CI

*Printed name and title*

Submitted electronically in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Date: August 13, 2026

Colleen D. Holland

*Judge's signature*

City and state: Rochester, New York

Hon. Colleen D. Holland, US Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK )
COUNTY OF MONROE )ss:
CITY OF ROCHESTER )

I, BRENDAN KYLE MILLER, being duly sworn, depose and state:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation (hereinafter IRS-CI), having been duly appointed on July 15, 2024, and, as such, am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. My responsibilities include the investigation of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act (Title 18, United States Code), and related offenses.

2. I have received extensive training in financial investigative techniques, having undergone 26 weeks of training at the Federal Law Enforcement Training Center. During the course of my employment with IRS-CI, I have conducted and assisted on several criminal investigations involving tax fraud, money laundering, wire fraud, and the illegal structuring of financial transactions. Many of these investigations focused on individuals deriving income from both legal and illegal sources. I have participated in the execution of several search and seizure warrants, which covered the searches of different locations including residences, business offices, and vehicles.

3. During the course of my employment with IRS-CI, I have conducted and assisted in criminal investigations involving tax fraud, money laundering, and the illegal

structuring of financial transactions. Many of these investigations focused on individuals deriving income from both legal and illegal sources.

4. I make this affidavit in support of a criminal complaint charging JAY SUNILBHARTHI GOSWAMI ("GOSWAMI") with violations of Title 18, United States Code, Sections 1343 and 1349 (Wire Fraud and Conspiracy to Commit Wire Fraud) and Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(h), and 1957 (Money Laundering and Conspiracy to Commit Money Laundering) (hereinafter, collectively the "TARGET OFFENSES").

5. This affidavit is based on my investigation and on information provided to me by members of the law enforcement community.

6. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation. Instead, I have set forth only the facts that I believe are sufficient to establish probable cause to believe that GOSWAMI committed the TARGET OFFENSES.

**PROBABLE CAUSE**

7. In or around January 2026, IRS-CI agents became aware of an internet and telephone-based fraud scheme that targeted elderly victims in the Western District of New York and other areas around the country.

8. The perpetrators of this scheme fraudulently represented to their victims that the victims' bank accounts, funds, and/or Personally Identifiable Information ("PII") were threatened or compromised in some manner. The perpetrators would convince the elderly

individuals to liquidate their assets in the form of cash, gold, and/or gift cards. The perpetrators would then pose as either members of law enforcement or other pertinent figures to further their scheme to defraud elderly individuals.

9. When the scheme involved either cash or gold, the perpetrators arranged for "money mules" to pick up the cash or gold from the victims and then deliver it to another member of the conspiracy.

10. As is set forth in further detail below, GOSWAMI is a money mule. On at least nine occasions, he either personally collected or conspired to collect cash and gold from elderly victims in New York and New Jersey.

11. In total, the victims lost the following approximate amounts:

| | |
|---|---|
| Victim 1 | $257,420 |
| Victim 2 | $159,000 |
| Victim 3 | $81,624 |
| Victim 4 | $514,000 |
| Victim 5 | $800,000 |
| Victim 6 | $1,700,000 |
| Victim 7 | $609,141 |
| Victim 8 | $438,000 |
| Victim 9 | $3,000,000 |
| **TOTAL** | **$7,559,185.00** |

## BACKGROUND REGARDING GOSWAMI

12. GOSWAMI is from Gujarat, India.

13. GOSWAMI has been in the United States since in or around January 2024. GOSWAMI is currently legally present in the United States on a student visa. GOSWAMI attends Farleigh Dickinson University studying Mechanical Engineering.

14. GOSWAMI resides in Jersey City, New Jersey.

**VICTIM 1**

15. Victim 1 is a 75-year-old resident of the Northern District of New York ("NDNY").

16. On or about December 13, 2025, Victim 1 reported to the New York State Police ("NYSP") that he/she was the victim of an elder fraud scheme. On or about April 22, 2026, IRS-CI Agents interviewed Victim 1. Below is a summary of the information that Victim 1 provided to NYSP and IRS-CI.

17. In or around August 2025, Victim 1 received a call from an unknown male who told Victim 1 that he/she had multiple credit cards opened in his/her name.

18. After a few phone call transfers, Victim 1 was contacted by another male who claimed his name was "ANDREW FERGUSON" ("FERGUSON") and that he worked for the "Federal Trade Commission." "FERGUSON" told Victim 1 that his/her social security number was compromised, and that Victim 1 needed to transfer all of Victim 1's money from Victim 1's savings and brokerage accounts to a "Government Safety Program" for safekeeping.

19. "FERGUSON" directed Victim 1 to transfer his/her money from retirement accounts into personal accounts, withdraw the cash, and then purchase gold on multiple occasions.

20. "FERGUSON" then instructed Victim 1 to give the cash and gold to money mules. Victim 1 stated that the money mule was the same person each time, until the final pickup.

21. Victim 1 described the first money mule as a middle-aged Indian man with facial hair. Victim 1 described the last money mule as a younger man.

22. On all but one occasion, the money mules met Victim 1 at Victim 1's residence. The exception was one time when Victim 1 met a money mule at a local grocery store.

23. Throughout the course of this scheme, between on or about September 4, 2025, and on or about October 24, 2025, "FERGUSON" fraudulently induced Victim 1 to liquidate his/her personal accounts and hand over approximately $177,500 in cash and approximately $79,920 in gold to the money mules.

24. "FERGUSON" also told Victim 1 that he would send checks to pay Victim 1 back. As detailed below, Victim 1 received checks totaling approximately $380,000 from various individuals. "FERGUSON" instructed Victim 1 to deposit the checks, withdraw the money, and then use it to purchase more gold or hand it over in cash to a money mule.

25. Based on my training and experience, I know that it is common for the perpetrators of elder fraud schemes to instruct victims to send money *via* check or wire to other victims in an attempt to conceal the nature and source of the funds from law

enforcement and financial institutions. I also know it is common for the perpetrators of elder fraud schemes to advise the victims receiving the funds that the money is "repayment" for the money or gold they have paid over to money mules previously. However, the perpetrators eventually instruct the victims to use the "repayment money" to obtain more gold and cash and turn the gold and cash over to money mules.

26. Specifically, on or about October 31, 2025, Victim 1 received a $75,000 check from an individual in Florida. "FERGUSON" instructed Victim 1 to deposit the check, withdraw $75,000 in cash, and give that cash to a money mule. Victim 1 complied and, on or about November 14, 2025, Victim 1 gave approximately $75,000 in cash to a money mule.

27. Similarly, on or about November 19, 2025, Victim 1 received a $90,000 check from an individual in New Jersey. "FERGUSON" directed Victim 1 to deposit the check and use the funds to purchase gold. On or about December 1, 2025, Victim 1 complied and wrote a check to a coin and jewelry store for approximately $89,586 worth of gold bars. Victim 1 then gave the gold bars to a money mule.

28. Once again, on or about December 3, 2025, Victim 1 received a $165,000 check from an individual in Texas. "FERGUSON" instructed Victim 1 to deposit the check and use the deposited funds to purchase gold bars. On or about December 10, 2025, Victim 1 complied, deposited the check, and wired approximately $164,388 to the same coin and jewelry store to purchase gold bars.

29. Victim 1 subsequently received a letter from the coin and jewelry store advising its customers of common scams. At this point, Victim 1 realized that his/her situation was likely a scam and contacted NYSP to report the incident.

30. Law enforcement contacted each of the individuals who sent checks to Victim 1, and all three confirmed that they were the victims of fraud.

## NYSP IDENTIFIES AND ARRESTS JAY GOSWAMI

31. With Victim 1's help, NYSP set up a sting operation in or around December 2025. NYSP conducted controlled phone calls between Victim 1 and "FERGUSON." During these calls, Victim 1 and "FERGUSON" arranged for a money mule to pick up what "FERGUSON" believed would be approximately $164,388 worth of gold bars.

32. Once Victim 1 confirmed that he/she had the gold bars, "FERGUSON" instructed Victim 1 to take pictures of the bars and send them to "FERGUSON."

33. On or about December 19, 2025, "FERGUSON" called Victim 1 to schedule the pickup of the $164,388 worth of gold by a money mule. "FERGUSON" asked Victim 1 to send him a picture of the box that purportedly contained the gold. "FERGUSON" also instructed Victim 1 to give the password "Rose Gold" to the money mule who came to collect the gold.

34. Later that day, a money mule arrived at Victim 1's residence and took the package, which contained fake gold, from Victim 1. Victim 1 alerted NYSP that the money mule was a dark-skinned male driving a white Chevrolet Equinox bearing registration MVT8338 and was the only occupant of the vehicle.

35. NYSP stopped the white Chevrolet Equinox bearing registration MVT8338 and identified the driver as GOSWAMI. An NYSP Trooper removed GOSWAMI from the car and advised GOSWAMI of his *Miranda* rights.

36. GOSWAMI subsequently provided NYSP with written consent to search his vehicle and two cellphones that were in GOSWAMI's possession (one of which is referred to hereinafter as the SUBJECT CELL PHONE).

37. GOSWAMI admitted the two cell phones belonged to him and provided passcodes to open them.

38. In searching GOSWAMI's vehicle, NYSP found:

a. The package Victim 1 had given to the money mule (*i.e.*, GOSWAMI) that day; and

b. A handwritten note taped to a piece of wrapping paper, as shown below:



**VICTIM 2**

39. Victim 2 is approximately 59 years old and lives in the Southern District of New York ("SDNY").

40. IRS-CI agents spoke with Victim 2 by phone. During this conversation, Victim 2 told the agents that, in or around December 2025, Victim 2 received a notification that he/she had purchased an Apple iPhone. The notification included a number that Victim 2 should call to authorize the purchase.

41. Because he/she had not purchased an iPhone, Victim 2 called the number provided and spoke with an individual who claimed his name was "RICHARD KELLY" ("KELLY") and that he worked for the United States Marshals Service ("USMS").

42. "KELLY" told Victim 2 that his/her PII had been compromised and someone was using Victim 2's PII to purchase things such as a house and car in different states.

43. "KELLY" instructed Victim 2 to withdraw approximately $14,000 in cash and give it to a money mule, whom "KELLY" claimed was a USMS employee named "TINA." "KELLY" told Victim 2 that "TINA" would provide the passcode "0621" when collecting Victim 2's funds.

44. "KELLY" also instructed Victim 2 to purchase approximately $145,000 worth of gold to give to another money mule, whom "KELLY" claimed was another USMS employee named "MIKE." "KELLY" told Victim 2 that "MIKE" would use the passcode "1018" when he came to pick up the gold.

45. Victim 2 followed "KELLY's" instructions and provided cash and gold to the two money mules in or around December 2025.

46. Victim 2 told IRS-CI agents that "MIKE," the money mule who picked up the gold, was driving a white-colored SUV.

47. Victim 2 provided IRS-CI agents with a picture of the package that Victim 2 had given "MIKE." The package was wrapped in the same wrapping paper that was found in the back of GOSWAMI's car. The attached handwritten note had Victim 2's name on it.

**NYSP INTERVIEWS GOSWAMI**

48. After his arrest on or about December 19, 2025, NYSP conducted a recorded interview of GOSWAMI.

49. During the interview, GOSWAMI said he went home to India approximately four to five months prior for a family funeral. GOSWAMI said he met an individual at the funeral who goes by "Black Tiger." GOSWAMI described "Black Tiger" as being in his early 30's. GOSWAMI said "Black Tiger" had a business, but he didn't know what the business was. GOSWAMI and "Black Tiger" talked at the funeral about GOSWAMI being in the United States and his studies in the United States.

50. "Black Tiger" got GOSWAMI's Instagram account through a connection of friends. "Black Tiger" contacted GOSWAMI via Instagram and GOSWAMI provided his WhatsApp number to "Black Tiger." "Black Tiger" added GOSWAMI to a group chat on WhatsApp. GOSWAMI said he did not know why the group was created but that it was

created approximately two to three weeks beforehand and then GOSWAMI was added. GOSWAMI said "Black Tiger" decided who was in the group.

51. GOSWAMI said he did not know "Black Tiger's" WhatsApp number by memory, but he was labeled as "Black Tiger" in GOSWAMI's phone.

52. GOSWAMI said "Black Tiger" asked him to pick something up for him and offered GOSWAMI money for gas and the time spent. GOSWAMI said this was the first time "Black Tiger" asked him to do something for him.

53. GOSWAMI stated he rented a car on or about December 17, 2025, to drive around the New York City area with a friend. GOSWAMI said he did not do any other pickups with the vehicle.

54. When asked about wrapping paper that was found in the vehicle, GOSWAMI claimed it was for a gift for a friend. GOSWAMI then said the wrapping paper was not his and that it was in the vehicle when he rented it.

55. A review of Sixt Rent-A-Car ("Sixt") records showed GOSWAMI rented the vehicle on or about December 16, 2025, the same date that was on the package Victim 2 had given to a money mule. GOSWAMI rented a Chevrolet Equinox bearing Pennsylvania Tag MVT8338. GOSWAMI was supposed to return the vehicle on or about December 21, 2025.

56. GOSWAMI stated he got a call from "Black Tiger" on or about December 18, 2025, asking GOSWAMI to do a pickup. GOSWAMI could not do the pickup on or about December 18, 2025, because he was with a friend, but could do the pickup on or about

December 19, 2025. GOSWAMI claimed he was not going to make money by doing the pickup.

57. GOSWAMI said he got the pickup address from "Black Tiger" and drove to do the pickup. GOSWAMI informed "Black Tiger" when he was at the pickup location, which was Victim 1's residence. "Black Tiger" told GOSWAMI to say the password "Rose Gold" to Victim 1, and then Victim 1 gave GOSWAMI a box with black tape around it. GOSWAMI claimed he did not know what was supposed to be in the box.

58. GOSWAMI stated he was going back to his residence after doing the pickup because "Black Tiger" did not give him another address to go to.

## REVIEW OF THE SUBJECT CELL PHONE

59. After GOSWAMI gave consent to search the SUBJECT CELL PHONE, a New York State Police Intelligence Analyst reviewed it. Your affiant subsequently obtained a federal warrant to search the SUBJECT CELL PHONE.

60. The SUBJECT CELL PHONE contained numerous WhatsApp group chats depicting the names, descriptions, and pictures of other potential victims. The SUBJECT CELL PHONE also contained money mule pickup addresses, cash and gold amounts, passwords to give victims, and pictures of packages containing gold and cash.

61. In particular, the SUBJECT CELL PHONE contained the following WhatsApp group chats:

a. 07306 Jay Mataji – Created on or about August 4, 2025, with 12 members (GROUP 1).

b. Work 📦 - Created on or about August 4, 2025, with 9 members (GROUP 2).

c. Jay Goga – Created on or about August 8, 2025, with 8 members (GROUP 3).

d. SK – Created on or about October 8, 2025, with 6 members (GROUP 4).

e. 🩸 🔱MAA🔱 🩸 - Created on or about October 13, 2025, with 7 members (GROUP 5).

f. 🗽 Maa 111 🗽 - Created on or about November 5, 2025, with 9 members (GROUP 6).

g. ‼️ SIKOTAR ‼️ - Created on or about December 18, 2025, with 8 members (GROUP 7).

62. In addition to the above listed WhatsApp group chats, GOSWAMI's WhatsApp conversation history with a contact listed as "Black Tiger" showed GOSWAMI had actually been in contact with "Black Tiger" since on or about August of 2025.

63. On or about September 24, 2025, GOSWAMI received the following photos from "Black Tiger" in a direct message:



STATE OF NEW YORK
TOWN COURT
COUNTY OF SARATOGA
TOWN of MILTON

Defendant: NA (Relationship to alleged victim)
Alleged Victim: NA (Relationship to defendant)

THE PEOPLE OF THE STATE OF NEW YORK
-vs.-
SAVANKUMAR GONDALIYA
Date of Birth 06/06/1999
Defendant(s)

ACCUSATION

BE IT KNOWN THAT, by this INFORMATION, BRIAN S WATTS as the Complainant herein, STATIONED at SP SARATOGA accuses the above mentioned Defendant(s), with having COMMITTED the MISDEMEANOR of RESISTING ARREST in violation of Section 205.30 Subdivision ____ of the PENAL Law of the State of New York.

That on or about 09/09/2025 at about 06:00 PM in the TOWN of MILTON, County of SARATOGA, the defendant(s) did intentionally, knowingly and unlawfully commit the misdemeanor of Resisting Arrest. A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person. Resisting arrest is a class A misdemeanor

FACTS

To Wit: On or about the aforementioned date and time while at 2000 Carlton Way in the Town of Milton, County of Saratoga, State of New York the defendant did intentionally, knowingly and unlawfully resist arrest. The defendant did so when members of the New York State Police were attempting to effect a lawful arrest the defendant refused to exit the vehicle. Members were able to open the driver door and the defendant actively resisted by physically pulling away from members and had to be physically removed from the vehicle and taken into custody.

All contrary to the statute herein provided.

The above allegations of fact are made by the Complainant herein on DIRECT KNOWLEDGE

NOTICE

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor. (PL 210.45)

Affirmed under penalty of perjury
this 09 TH day of SEPTEMBER, 2025
--OR--
Subscribes and sworn to before me this ____ day of ____, 20 ____

COMPLAINANT -



STATE OF NEW YORK
COURT
COUNTY OF SARATOGA
TOWN of MILTON

Defendant: NA (Relationship to alleged victim)
Alleged Victim: NA (Relationship to defendant)

THE PEOPLE OF THE STATE OF NEW YORK
-vs.-
SAVANKUMAR GONDALIYA
Date of Birth 06/06/1999
Defendant(s)

ACCUSATION

BE IT KNOWN THAT, by this FELONY COMPLAINT, BRIAN S WATTS as the Complainant herein, STATIONED at SP SARATOGA accuses the above mentioned Defendant(s), with having ATTEMPTED the FELONY of GR LARC-2ND:PROP VALUE >$50000 in violation of Section 155.40 Subdivision 01 of the PENAL Law of the State of New York.

That on or about 09/09/2025 at about 06:00 PM in the TOWN of MILTON, County of SARATOGA, the defendant(s) did intentionally, knowingly and unlawfully commit the felony of Grand Larc-2nd:Property Value Exceeds $50,000. A person is guilty of grand larceny in the second degree when he steals property and when: 1. The value of the property exceeds fifty thousand dollars. Attempted Grand larceny in the second degree is a class D felony

FACTS

To Wit: On or about the aforementioned date and time while at 2000 Carlton Way in the Town of Milton, County of Saratoga, State of New York, the defendant did intentionally, knowingly and unlawfully attempt to steal property from the victim and the value exceeded fifty thousand dollars. The defendant did so when he attempted to steal what he believed to be one hundred and fifty thousand dollars in gold coins.

All contrary to the statute herein provided.

The above allegations of fact are made by the Complainant herein on direct knowledge and/or upon information and belief, with the sources of Complainant's information and the grounds for belief being the facts contained in the attached SUPPORTING DEPOSITION(s) of: SHEILA MCNALLY

NOTICE

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor. (PL 210.45)

Affirmed under penalty of perjury
this 09 TH day of SEPTEMBER, 2025
--OR--
Subscribes and sworn to before me this ____ day of ____, 20 ____

COMPLAINANT -



CONFIDENTIAL
STATE OF NEW YORK – COUNTY OF SARATOGA
APPLICATION FOR COUNSEL CRIMINAL/FAMILY COURT - PART I
Please return application to:
Saratoga County Assigned Counsel Office
40 McMaster Street, Ballston Spa, NY 12020
Phone: (518) 889-8128
AssignedCounsel@saratogacountyny.gov

APPLICANT INFORMATION

Full Name:
Date of Birth: Cell Phone: Home Phone:
Current Address: Email Address:
City: State: ZIP Code:
Marital Status: Were you born in the US? Yes No
Number of Financial Dependents in Household (list all, including minors, elderly or disabled):

CURRENT CASE INFORMATION

CRIMINAL CHARGES:
Court: Judge: Arrest Date: Arraignment Date:
Charges: Next Court Date:
Alleged Co-Defendant(s): Alleged Witness(es): Alleged Victim(s):

Family Court:
Court: Saratoga County Judge: Next Court Date:
Matter:
Other Parties: Witness(es)

EMPLOYMENT INFORMATION

Occupation (if student, indicate the school attending; if self-employed, describe what type of work you do):
Current Employer - Name and Address:
Net Pay (Take Home): $ per week bi-weekly month year

OTHER CIRCUMSTANCES

1. Are you incarcerated, detained, hospitalized or confined to a mental health facility? Yes No
2. Are you currently receiving deemed eligible or pending receipt of need-based public assistance? Yes No
3. Have you been deemed eligible for assigned counsel in the past six (6) months? Yes No

SIGNATURE OF APPLICANT

Signature of applicant: Date:

IF THE ANSWER TO QUESTION 1, 2 or 3 is "YES", STOP HERE.
OTHERWISE, PLEASE CONTINUE TO THE NEXT PAGE



SARATOGA COUNTY

APPLICATION FOR COUNSEL CRIMINAL/FAMILY COURT

Saratoga County Assigned Counsel Office
40 McMaster Street
Ballston Spa, New York 12020
Phone: (518) 889-8128
Email: AssignedCounsel@saratogacountyny.gov

**You may submit your application in the following ways:**

1) *For Family Court matters ONLY:* Send completed application to Saratoga County Family Court, 35 West High Street, Ballston Spa, New York 12020 or via e-mail to SaratogaFamily@nycourts.gov

*For all other matters:*

2) Hand deliver the completed application to the Assigned Counsel Office anytime Monday through Friday between the hours of 9:00 AM and 4:30 PM, or

3) Email application to AssignedCounsel@saratogacountyny.gov, or

4) Mail the completed application to the Assigned Counsel Office at the address above.

Applicants may contact our office at AssignedCounsel@saratogacountyny.gov for requests to be contacted and any questions regarding applications.


STATE OF NEW YORK
TOWN

CONFIDENTIAL APPLICATION FOR COUNSEL PART II

OTHER INCOME

Do you receive a pension, annuity or retirement payments? Yes No If yes, list amount: $
Do you currently receive income from owned real estate? Yes No If yes, list amount: $
List other sources of income you receive (do not include child support or public assistance):
1.
2.

ASSETS

List amount in the following bank accounts: Checking $ Savings $
Do you own real estate? Yes No If yes, list/estimate market value and amount owed for each property below:
1. Primary Residence Exception Market Value $ Amount Owed $
2. Market Value $ Amount Owed $
3. Market Value $ Amount Owed $
List any vehicles owned **not necessary** for basic life activities: (For example – Cars, Boats, RV's, ATV's, Snowmobiles, Motorcycles)
1. Vehicles : Market Value $ Amount Owed $
2. Market Value $ Amount Owed $
3. Market Value $ Amount Owed $
List value of Stocks and Bonds:
1. Estimate Market Value $ Amount Owed $
2. Estimate Market Value $ Amount Owed $

MONTHLY LIVING EXPENSES

Food: $ Rent/Mortgage: $ Utilities:$
Transportation/Auto Expenses: Payment $ Insurance $
Child Care: $ Child Support Paid Out: $ Alimony/Maintenance Paid Out:$
Medical Expenses: Health Ins.: $ Co-Pays: $ Medication: $ Debts: $
List other expenses. Include employment-related expenses, school loans/fees, minimum monthly credit card payments, unreimbursed medical expenses, expenses related to age or disability:
1.
2.
3.

SIGNATURE OF APPLICANT

Signed: Date:

**Please note:** If you have completed Part II, please provide additional information to assist us in determining your eligibility for assignment of counsel:

1. If you are employed, copies of your last four (4) pay stubs.
2. Copies of the most recent receipts for expenses, including but not limited to utility bills, rent/mortgage, insurance, transportation and childcare.
3. If you are self-employed, copies of your last three (3) years of tax returns.
4. A list of any and all assets, value and amount owed, if not already disclosed in Part II above.
5. Account statements for any and all checking and savings accounts.

**Applicants are strongly encouraged to submit all of the above documentation at the time of their application to help ensure it can be timely processed.**

64. On or about September 24, 2025, GOSWAMI sent the following message to "Black Tiger" after receiving the above photos:

> ↖ Read
> **Local User** 9/24/2025 3:30:37.566 PM
> BEGIN:VCARD
> VERSION:3.0
> N:;Saif (lawyer);;;
> FN:Saif (lawyer)
> TEL;waid=18623260301:+1 (862) 326-0301
> END:VCARD

65. Based on my training and experience, I respectfully submit that another co-conspirator in this fraud scheme was arrested during a money mule pickup and GOSWAMI provided the phone number of a lawyer to "Black Tiger" as depicted in the message above. I also respectfully submit that this demonstrates GOSWAMI knew that—or was at least on notice of the fact that—the cash and gold he was collecting from victims were the proceeds of fraud.

66. On or about December 19, 2025, the GROUP 5 WhatsApp Chat contained the following messages:

h. At approximately 11:26AM, an unknown user sent a message with Victim 1's address.

i. At approximately 11:45AM, the same unknown user sent Victim 1's address again. GOSWAMI responded with numerous pictures of his GPS showing his ETA and current locations.

j. At approximately 12:01PM, that same unknown user sent a screenshot of Victim 1's residence and address.

k. At approximately 12:03PM, GOSWAMI responded with a picture of Victim 1's residence, which appeared to have been taken from inside a vehicle that was parked outside of Victim 1's residence.

l. At approximately 12:04PM and 12:06PM, the unknown user sent the following message, which appeared to be a description of Victim 1 on that day, with the wrong age. Victim 1's sex has been redacted from the affidavit. It should be noted that the code "Rose Gold," was the same code that "FERGUSON" gave to Victim 1:

**56586932367391@lid**
↘ Read
12/19/2025 12:04:20.000 PM

Neon green top
Green pant

[redacted]
Age - 87

Code - Rose Gold

**56586932367391@lid**
↘ Read
12/19/2025 12:06:08.000 PM

Neon green top
Green pant

[redacted]
Age - 87

Code - Rose Gold

m. At approximately 12:14PM, GOSWAMI sent a video of himself holding the brown shoe box that Victim 1 provided GOSWAMI. A screenshot of the video is below:



67. On or about December 16, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 4:13PM, an unknown user sent a message with Victim 2's address.

b. At approximately 5:01PM, GOSWAMI received the following message from an unknown user and sent the following response. Notably, the "Cx name" was Victim 2's name, which has been redacted from the affidavit:

**165262338838739@lid** — Read — 12/16/2025 5:01:10.000 PM
Shirt- grey
Pants-blue
Age-59
Female
Passwrd-
Cx name [redacted]

**Local User** — Read — 12/16/2025 5:01:59.524 PM
Done

**Local User** — Read — 12/16/2025 5:02:06.847 PM
Kadhavi do baar

c. Between approximately 5:04PM and 5:17PM, GOSWAMI received the following messages from an unknown user. The runner name "MIKE" and the password "1018" were the same as the name and password that "KELLY" provided to Victim 2:

**165262338838739@lid** — Read — 12/16/2025 5:02:20.000 PM
1 minit baki re atle call kar je jay

**165262338838739@lid** — Read — 12/16/2025 5:04:27.000 PM
Runner name:- MIKE

**165262338838739@lid** — Read — 12/16/2025 5:04:36.000 PM
Password : *1018*

**165262338838739@lid** — Read — 12/16/2025 5:17:54.000 PM
*Ricived* ✅

d. Between approximately 5:19PM and 5:26PM, GOSWAMI sent videos and pictures of the package he picked up from Victim 2.

e. One picture showed that the package was wrapped in wrapping paper and had a note card taped to the front, which matched the wrapping paper and note that were found in GOSWAMI's vehicle on or about December 19, 2025, as shown below:



f. GOSWAMI also sent videos and pictures of someone unboxing the package and revealing the gold contained therein, as shown below:







g. Between approximately 5:27PM and 5:28PM, GOSWAMI sent the following messages, which based on my training and experience I respectfully submit show GOSWAMI telling GROUP 5 how much gold he picked up from Victim 2 and asking where to drop it off:




68. The SUBJECT PHONE also contained a direct WhatsApp message with a WhatsApp number labeled "Black Tiger" that included an address in the Western District of New York ("WDNY").

**VICTIM 3**

69. Victim 3 was a resident of the WDNY.

70. Victim 3 told law enforcement that he/she received an alert on his/her phone asking if he/she had purchased Apple and Lululemon gift cards. Victim 3 eventually received a call from an individual who claimed to be an employee of the Department of Justice (DOJ) named "DAMIAN WILLIAMS" ("WILLIAMS").

71. "WILLIAMS" told Victim 3 that he/she needed to purchase gold to get his/her money back. Victim 3 followed "WILLIAMS's" instructions and purchased approximately $81,624 in gold.

72. Then, "WILLIAMS" told Victim 3 to package the gold and give it to an "undercover agent."

73. On or about December 10, 2025, a money mule posing as an "undercover agent" came to Victim 3's residence and took the package containing approximately $81,624 worth of gold. Victim 3 described the money mule's vehicle as a gray-colored, 4 door sedan.

74. Surveillance footage from a nearby store showed a vehicle matching that description was parked across the street from Victim 3's residence when Victim 3 brought the box of gold to the money mule and the money mule drove away.

75. While analyzing the SUBJECT CELL PHONE, the following communications related to Victim 3 were found:

a. At approximately 10:05AM on or about December 9, 2025, an unknown user sent a message in WhatsApp GROUP 5 that included Victim 2's zip code.

b. At approximately 10:06AM, GOSWAMI sent a screenshot of what appeared to be directions on a GPS system to Victim 2's zip code, as did another unknown user.

c. On or about December 9, 2025, at approximately 5:52PM, GOSWAMI received a direct WhatsApp message from "Black Tiger" that was Victim 3's address.

d. On or about December 10, 2025, at approximately 3:16PM and 3:20PM, GOSWAMI conducted two Audio/Voice calls with "Black Tiger."

e. On or about December 10, 2025, at approximately 3:21PM, GOSWAMI sent a message to "Black Tiger" that said, "2500$ due + 10/12/2025 sedhaji and Curnal 51 oz commission 700$."

f. At approximately 3:22PM, GOSWAMI sent another message to "Black Tiger" that said "Total 3200$ due."

g. On or about December 10, 2025, at approximately 3:22PM, "Black Tiger" said "Deep pikup thay."

76. Based on my training and experience, I know that money mules usually receive a commission for picking up cash or gold bars from victims. I respectfully submit that, in the above messages, GOSWAMI was discussing the commission for picking up gold bars from Victim 3.

**VICTIM 4**

77. Victim 4 is an 81-year-old resident of the SDNY.

78. In or around early September 2025, Victim 4 logged onto his/her computer and saw a blinking screen and a message that said to call Microsoft at the number 202-430-6962.

79. Victim 4 called the number and an individual answered who claimed to be "ROGER BIAL" ("BIAL"). "BIAL" told Victim 4 that his/her computer had been hacked by 17 viruses. "BIAL" further represented to Victim 4 that the viruses appeared to be related to fraud, and therefore he had to transfer Victim 4 to someone from the Federal Communications Commission (FCC).

80. "BIAL" then transferred Victim 4's call to another individual who represented himself as "Federal Agent ANDREW FERGUSON" ("FERGUSON").[1] "FERGUSON" told Victim 4 that the viruses on his/her computer were coming from China and that Victim 4's bank accounts were potentially compromised. "FERGUSON" asked where Victim 4 banked, and he/she told "FERGUSON."

[1] Notably, Victim 1 was also defrauded by someone who used the name "FREGUSON."

81. "FERGUSON" told Victim 4 that he/she was going to have to withdraw the funds from his/her accounts and meet a "Field Agent" near his/her residence to deliver the cash. "FERGUSON" told Victim 4 the cash would be safeguarded in a federal locker and returned to him/her at the end of the case.

82. Victim 4 spoke to "FERGUSON" on three different phone numbers: 202-350-1456, 202-495-1433, and 202-430-6588. "FERGUSON" claimed he was in Washington, DC, and his "agent number" was 799. "FERGUSON" told Victim 4 this was a sensitive investigation and directed Victim 4 not to speak about it with anyone.

83. At "FERGUSON's" direction, Victim 4 went to his/her bank, withdrew approximately $15,000 in cash, photographed the money, placed it in a cardboard box, and put the case information on the box. "FERGUSON" instructed Victim 4 to meet a field agent near his/her house.

84. While on the phone and being directed by "FERGUSON," Victim 4 walked the box to a designated location and approached a vehicle driven by an Indian male.

85. "FERGUSON" instructed Victim 4 to give his/her phone to the driver so the driver could provide the code word to "FERGUSON." Victim 4 then handed the box containing Victim 4's cash to the driver and returned to his/her residence. "FERGUSON" told Victim 4 that the money would be safeguarded in a federal locker and provided Victim 4 with a "transaction ID number."

86. On two other occasions within the same week, "FERGUSON" instructed Victim 4 to withdraw approximately $42,000 and over approximately $200,000 in cash from his/her bank accounts and give the cash to "field agents."

87. Victim 4 said the first and third "field agents" were the same person. Victim 4 described the second "field agent" as a heavier set Indian Male.

88. After the three cash deliveries, "FERGUSON" told Victim 4 that his/her money was safe in a federal locker. "FERGUSON" told Victim 4 that he/she would be reimbursed with a United States Treasury Check for the amount of cash that Victim 4 provided plus 10% because Victim 4 was cooperating with federal authorities. "FERGUSON" sent Victim 4 a picture of a US Treasury Check, made payable to Victim 4 in the amount of approximately $325,600.

89. In or around October 2025, "FERGUSON" told Victim 4 he/she needed to cash out his/her investment accounts and purchase gold. Victim 4 complied and liquidated his/her stock investments. On or about December 1, 2025, Victim 4 used those funds to purchase approximately $257,000 worth of gold bars. "FERGUSON" instructed Victim 4 to package the gold bars and meet a "field agent" near Victim 4's residence. "FERGUSON" said the gold bars would be "safeguarded" in a federal locker. Victim 4 did as instructed and gave the box of gold bars to an individual who Victim 4 described as an Indian male. After that, "FERGUSON" stopped answering Victim 4's calls.

90. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI was one of the money mules who posed as a "field agent" and took money from Victim 4.

91. Specifically, on or about December 12, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 10:20AM, an unknown user sent a message with Victim 4's zip code.

b. At approximately 10:20AM, GOSWAMI sent what appeared to be a screenshot of a map showing the distance from his current location to Victim 4's zip code.

92. On or about December 13, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 11:32AM, an unknown user sent a message with Victim 4's home address.

b. At approximately 11:34AM, GOSWAMI replied with what appeared to be a map showing directions from his current location to Victim 4's address.

c. Between approximately 11:37AM and 12:49PM, GOSWAMI sent numerous pictures of what appeared to be a car GPS system.

d. At approximately 12:52PM, an unknown user sent what appeared to be a google earth or similar picture of Victim 4's house with the address labeled on the house, followed by a message that said, "Cx home."

e. At approximately 12:53PM, GOSWAMI replied "ok" and sent another picture of what appeared to be a car GPS system.

f. Between approximately 12:57PM and 1:06PM, an unknown user sent the following messages, which included Victim 4's sex, which has been redacted from this affidavit. Based on my training and experience, as well as the additional information found within GOSWAMI's phone, I respectfully submit that this unknown user was describing Victim 4 so that GOSWAMI knew what individual to look for:

↘ Read
**56586932367391@lid** 12/13/2025 12:57:19.000 PM

Cx details

[redacted] - 82 yrs

Clothes - Navy blue pants and gray sweatshirt with Christmas logo

↘ Read
**56586932367391@lid** 12/13/2025 1:01:46.000 PM

A

↘ Read
**56586932367391@lid** 12/13/2025 1:06:50.000 PM

Password- 2025

g. At approximately 1:17PM, GOSWAMI sent the following picture of a package to the group. The package included Victim 4's name and address, which has been redacted from the affidavit:



h. At approximately 1:20PM, GOSWAMI sent two videos that appeared to show the same box pictured above.

i. At approximately 1:33PM, an unknown user sent the following message, which appeared to be the location where the unknown user wanted GOSWAMI to bring the package:


↘ Read
56586932367391@lid 12/13/2025 1:33:13.000 PM

71 West 47 Street
New York NY 10036

j. At approximately 1:39PM, an unknown user sent the following message:


↘ Read
198857656897782@lid 12/13/2025 1:39:17.000 PM

Open box 📦 video

k. At approximately 1:57PM and 1:58PM, GOSWAMI sent two separate videos of what appeared to be GOSWAMI opening the box and pulling out gold. Screenshots from the videos are below:




l. On or about December 13, 2025, at approximately 1:59PM, GOSWAMI sent the following pictures:







m. Between approximately 2:06PM and 3:34PM, GOSWAMI sent numerous pictures of what appeared to be a car GPS system, close up pictures of the gold pictured above, a message that said, "Red Mazda suv," and a picture of a dollar bill to display the serial number.

93. As discussed in further detail below, during this investigation, I obtained and analyzed records related to Bank of America account ending -6626 ("BOA Account -6626"), which belonged to GOSWAMI.

94. That analysis revealed that, on or about December 15, 2025, GOSWAMI received two Zelle payments for approximately $3,000 and $500, respectively. One of the Zelle payments was labeled "Dhanyawad bhai madad karva mate." According to "Google Translate," that means "Thanks for the help brother" in Gujarati.

95. My analysis of BOA Account -6626 also revealed that, on or about December 15, 2025, GOSWAMI deposited approximately $4,000 in cash at an ATM in Jersey City, New Jersey.

## VICTIM 5

96. Victim 5 was a 78-year-old resident of the NDNY.

97. Victim 5 told IRS-CI agents that, in or around July or August of 2025, Victim 5 was contacted by an individual who identified himself as "JOHN CAMPBELL" ("CAMPBELL") and told Victim 5 that his/her bank account had been compromised.

98. On several occasions, "CAMPBELL" instructed Victim 5 to purchase gold, package the gold, send a picture of him/herself, and meet a money mule at a designated location to turn over the gold.

99. Victim 5 met the money mules in a ShopRite parking lot near his/her house each time. The money mules provided Victim 5 with codes, like an ID number, and never got out of their cars.

100. Victim 5 described the money mules as foreign. Victim 5 said the money mules were usually different people but that he/she may have seen a particular money mule twice.

101. In total, Victim 5 was defrauded out of just over approximately $800,000.

102. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI was one of the money mules who took money from Victim 5.

103. Specifically, on or about September 2, 2025, a direct WhatsApp chat with "Black Tiger" contained the following messages:

a. At approximately 1:55PM, "Black Tiger" sent GOSWAMI a message that included Victim 5's zip code and city. "Black Tiger" sent 2 more messages at approximately 1:55PM that said "Map" and "Fast."

b. At approximately 1:56PM, GOSWAMI replied with what appeared to be a screenshot of GOSWAMI's current location.

c. At approximately 2:00PM, "Black Tiger" sent a message to GOSWAMI that said "Satart."

d. At approximately 2:02PM, GOSWAMI sent what appeared to be a screenshot of a GPS system.

e. At approximately 2:09PM, "Black Tiger" sent GOSWAMI an address with the same zip code as Victim 5, that said "Shop rite store parking lot."

f. At approximately 2:15PM, GOSWAMI sent a picture of what appeared to be a screenshot of a GPS system with his current location.

g. At approximately 2:19PM, GOSWAMI and "Black Tiger" conducted an audio/video call.

h. Between approximately 2:19PM and 3:43PM, GOSWAMI sent multiple pictures to "Black Tiger" of what appear to be screenshots of a GPS system. In those pictures, it appeared GOSWAMI was heading towards the city where Victim 5 lived.

i. Between approximately 2:41PM and 4:33PM, GOSWAMI and "Black Tiger" conducted multiple audio/video calls, and "Black Tiger" sent multiple messages asking for an update.

j. At approximately 4:49PM, GOSWAMI sent three videos to "Black Tiger" that appeared to be GOSWAMI opening a package containing gold. Screenshots from the videos are below:





k. Between approximately 4:53PM and 7:21PM, GOSWAMI and "Black Tiger" conducted numerous audio/video calls.

l. At approximately 6:40PM, "Black Tiger" sent a message saying "580 Fifth Avenue 47 Street." Based on my training and experience and knowledge of this investigation, I respectfully submit that "Black Tiger" was telling GOSWAMI where to bring the gold that GOSWAMI took from Victim 5.

104. Records from BOA Account -6626 showed that, on or about September 3, 2025, GOSWAMI deposited approximately $5,758 in cash at an ATM in Jersey City, New Jersey.

105. On or about October 3, 2025, the GROUP 3 WhatsApp group chat contained the following messages:

a. At approximately 12:22PM, an unknown user sent the following message that included Victim 5's zip code and city, which are redacted for this affidavit:




b. At approximately 12:24PM, GOSWAMI sent what appeared to be a map showing his current location to Victim 5's zip code.

c. At approximately 12:39PM, GOSWAMI sent what appeared to be a picture of a car GPS system.

d. At approximately 12:47PM, an unknown user sent a message containing an address with the same zip code as Victim 5, that said "Shop rite store parking lot."

e. At approximately 1:10PM, an unknown user sent a message saying, "Send map in group every 30 minutes."

f. Between 12:48PM and 2:41PM, GOSWAMI sent multiple pictures of what appeared to be a car GPS system.

g. At approximately 2:55PM, an unknown user sent the following message, which included Victim 5's age, sex, and make, model, color, year, and license plate number of his/her car, which are redacted in this affidavit:

↘ Read
**177107774750956@lid** 10/3/2025
2:55:48.000 PM

Cx details

Age-78 years
Gender-[redacted]
Dress-Grey stripes tshirt and blue jeans
Password- 1414

Car details-[redacted]

h. At approximately 3:05PM, GOSWAMI sent the following picture, followed by a video of the same bag:



i. At approximately 3:34PM and 3:35PM, GOSWAMI sent a video of what appeared to be the gold from the above bag and GOSWAMI counting the gold, followed by a picture of the same gold in the video. A screenshot from the video (left), and the picture GOSWAMI sent (right) are below:





j. At approximately 3:39PM, GOSWAMI sent the following picture, which appeared to be a receipt for the gold purchased by Victim 5. The receipt included Victim 5's name and address, which have been redacted from the affidavit:




k. At approximately 4:30PM and 4:33PM, an unknown user sent the messages below. Based on my training and experience, I respectfully submit that one of these addresses is where GOSWAMI was instructed to drop off the gold he took from Victim 5 at the time mentioned within the screenshot below:




l. Between approximately 4:54PM and 6:17PM, GOSWAMI sent numerous pictures of what appeared to be a car GPS system.

m. At approximately 6:33PM, GOSWAMI sent a message that said "Tokan vada ni raah jovu chu ok" and another message that said "Street par." According to Google Translate, those messages mean, "I'm waiting for the person with the token" and "Across the street" in Gujarati.

n. At approximately 6:43PM, an unknown user responded "Ok" and then "7 pm sudhi aavi jse," which translated from Gujarati to English means "It will arrive by 7PM."

o. At approximately 7:04PM, GOSWAMI sent a picture of what appeared to be himself in his car with someone on the phone named "Leo."

p. At approximately 7:36PM, GOSWAMI sent the following picture:




q. At approximately 7:38PM, an unknown user sent a message saying, "Good night."

106. BOA Account -6626 showed that, on or about October 4, 2025, GOSWAMI deposited $5,030 in cash at an ATM in Jersey City, New Jersey.

## VICTIM 6

107. Victim 6 was a 72-year-old resident of the NDNY.

108. According to a statement that Victim 6 gave to local law enforcement, in or around October 2025, Victim 6 received a voicemail from someone purporting to be a customer service representative, who asked whether a $999.99 purchase at Apple was a valid charge. Victim 6 called a number that he/she believed was a customer service number and spoke to an individual claiming to be "JERRY MARTIN" ("MARTIN"). "MARTIN" told

Victim 6 that there were multiple accounts in his/her name that may have been used for illegal activities. "MARTIN" told Victim 6 that he/she may have been a victim of identity fraud. "MARTIN" then purported to transfer Victim 6's call to the Social Security Administration (SSA).

109. Once transferred, Victim 6 spoke with an individual claiming to be "JANIE GREEN" ("GREEN"). "GREEN" told Victim 6 that he/she was under investigation because GREEN claimed someone had rented a car using Victim 6's name in Texas and drugs were found in that car. "GREEN" told Victim 6 that he/she was a prime suspect in the case suspected of money laundering. "GREEN" then transferred Victim 6 to "Arlington Financial Service Division of US Marshal's Office."

110. Victim 6 next spoke with an individual claiming to be "ADAM PETERSON" ("PETERSON") with the USMS. According to Victim 6, "PETERSON" had a south Asian accent. "PETERSON" told Victim 6 that Texas had issued a warrant against him/her for various crimes. "PETERSON" gave Victim 6 two options: either (a) hire an attorney but be detained for 24-48 hours and in custody for 6 months or (b) have two USMS officers act on Victim 6's behalf. Victim 6 selected the second option. "PETERSON" made Victim 6 sign a non-disclosure agreement and told him/her that he/she could not discuss the matter with anyone.

111. "PETERSON" instructed Victim 6 to purchase between $350,000 and $360,000 in gold and give it to someone from the "US Marshals Courier Service."

112. Before the first pickup, Victim 6 was assigned a new contact person with the USMS, an individual named "PETER MARKETOS" ("MARKETOS"). "MARKETOS" gave Victim 6 a password of "4610" before he/she was allowed to speak with him.

113. "MARKETOS" instructed Victim 6 to open a new bank account and transfer funds to that account to purchase gold. Victim 6 complied. "MARKETOS" was on the phone when Victim 6 was driving to the shop, when he/she placed the order in the shop, when he/she drove to the bank, and when he/she drove home. Victim 6 took photos of the gold so it could be counted, packaged the gold, and wrote his/her name across the top of the box. Victim 6 also took photographs of the sales order and wire transfer paperwork. "MARKETOS" was on the phone during all of this.

114. "MARKETOS" instructed Victim 6 to drive to a plaza near his/her residence where there were a Dollar General and Pet Supplies Plus. Victim 6 had to tell "MARKETOS" his/her hair color, license plate number, what he/she was wearing, and what his/her car looked like.

115. Each time Victim 6 met with a money mule, "MARKETOS" gave Victim 6 the money mule's name and a password. "MARKETOS" stayed on the phone with Victim 6 while the money mules gave Victim 6 their name and password and "verified" the contents of the package.

116. Victim 6 turned over gold to money mules six times and lost just over approximately $1,700,000 as a result.

117. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI and his co-conspirators were responsible for defrauding Victim 6.

118. Specifically, on or about December 16, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 8:34AM, an unknown user sent a message including Victim 6's zip code.

b. At approximately 8:52AM, an unknown user sent a picture of what appeared to be a screenshot of a GPS system to Victim 6's city and zip code.

c. Between on or about 8:55AM and 1:45PM, the same unknown user who sent the screenshot of the GPS system sent numerous pictures of what appeared to be a car GPS system.

d. At approximately 1:49PM, an unknown user sent a picture of a Dollar Tree in Victim 6's city.

e. At approximately 2:14PM, an unknown user sent the following message, which included Victim 6's full name, sex, and vehicle make, model, year, color, and license plate, all of which have been redacted from this affidavit:


↘ Read
56586932367391@lid 12/16/2025 2:14:24.000 PM
Name: [redacted]
Age: 72
Sex: [redacted]
what she is wearing:, sky blue jacket, navy blue pants navy blue boots,glasses silver hair, flower navy blue print
Vehicle: [redacted]
License Plate: [redacted]
Password:

Runner name : MIKE

f. At approximately 2:31PM, an unknown user sent a picture of the vehicle described in the above message with the same license plate, which appeared to be parked in a parking lot.

g. At approximately 2:38PM and 2:40PM, an unknown user sent the following messages:




h. At approximately 2:47PM, the same unknown user that sent a picture of what appeared to be Victim 6's vehicle in the parking lot sent a video of a package that had Victim 6's name on it. A screenshot of the video is below with Victim 6's name redacted:



i. At approximately 3:08PM, the same unknown user that sent the previous video sent another video unboxing what appeared to be the same package with Victim 6's name on it, and counting the gold. A screenshot from the video is below:



## VICTIM 7

119. Victim 7 was a 71-year-old resident of the WDNY.

120. Victim 7 was a chiropractor with an at-home office. In or around August 2025, someone called Victim 7's office and claimed to be "OFFICER OLECRON" ("OLECRON") with the Drug Enforcement Administration (DEA).

121. "OLECRON" told Victim 7 that the DEA seized illegal drugs at the border of the United States and Mexico that had Victim 7's name and National Provider Identifier (NPI) number on them.

122. "OLECRON" transferred Victim 7 to another individual claiming to be "DANNY WATSON" ("WATSON") with the Department of Homeland Security (DHS). "WATSON" told Victim 7 that DHS found approximately 11 offshore bank accounts with Victim 7's information that were tied to the illegal drugs seized at the border. "WATSON" told Victim 7 that there were two FBI agents on the way to arrest Victim 7 but later told Victim 7 that he had called them off.

123. "WATSON" gave Victim 7 two options: either (a) hire an attorney and fight the allegations in court in Washington, DC, or (b) fully cooperate with "WATSON" and the investigation. Victim 7 chose the second option.

124. "WATSON" told Victim 7 that he/she needed to empty out his/her bank accounts and put the funds into a DOJ locker for safekeeping. "WATSON" told Victim 7 that he/she would get his/her money back at the end of the investigation. "WATSON" instructed Victim 7 to send him pictures of all his/her bank accounts and their balances.

125. At "WATSON's" direction, Victim 7 withdrew approximately $93,500 in cash from different personal bank accounts. On or about August 27, 2025, "WATSON" told Victim 7 to meet a money mule at a Target near Victim 7's residence and give the mule cash. "WATSON" told Victim 7 that the password was "Jerry." "WATSON" made Victim 7 take pictures of the cash and send them to him.

126. Between on or about August 29, 2025, and September 4, 2025, "WATSON" instructed Victim 7 to ship approximately $22,500 in cash to an unknown individual in California and wire approximately $62,548.88 to an unknown individual's bank account at Citibank, under the false pretense the funds were being kept in a DOJ locker for safekeeping.

127. On or about September 9, 2025, "WATSON" convinced Victim 7 to take approximately $550,000 out of Victim 7's retirement account. "WATSON" advised Victim 7 to purchase gold bars with the funds, and Victim 7 did. Victim 7 purchased approximately $370,576 worth of gold bars.

128. On or about September 17, 2025, "WATSON" told Victim 7 to meet a money mule at another location and give the gold to the mule so that it could be put in a DOJ locker for safekeeping. Victim 7 went to the pickup location and met a money mule, who came to Victim 7's car, provided Victim 7 with the password "Jerry," and gave the money mule the packaged gold worth approximately $370,576.

129. On or about September 18, 2025, "WATSON" instructed Victim 7 to send a bank check, worth approximately $122,565.50, to a company in California, under the false pretense that it would be put into a DOJ locker for safekeeping.

130. In total, Victim 7 was scammed out of approximately $609,141.

131. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI was one of the money mules who took cash from Victim 7.

132. Specifically, on or about August 27, 2025, the GROUP 1 WhatsApp group chat contained the following messages:

a. At approximately 12:13PM, an unknown user sent a message that included Victim 7's zip code and "83500." The same user then sent a message saying "Map."

b. At approximately 12:13PM and 1:03PM, GOSWAMI replied with what appeared to be a GPS screenshot to Victim 7's zip code.

c. At approximately 1:22PM, an unknown user sent a message with the address of the Target near Victim 7's residence (the same location where "WATSON" told Victim 7 to meet a money mule, as discussed above).

d. Between approximately 1:14PM and 6:27PM, an unknown user sent GOSWAMI multiple requests for an update or ETA. GOSWAMI responded with a picture of what appeared to be a car GPS. Two of the map locations included the city of the pickup location, which is the city where Victim 7 lives, and is in the WDNY.

e. At approximately 4:46PM, GOSWAMI sent what appeared to be a video of himself driving.

f. At approximately 6:28PM, an unknown user sent a picture of Victim 7's car to include Victim 7's license plate, as well as a picture of Victim 7. Based on my training and experience, I respectfully submit that Victim 7 had sent these pictures to "WATSON" who then relayed the pictures to GOSWAMI and the other money mules, so GOSWAMI knew what car and victim to look for.

g. At approximately 6:29PM, an unknown user sent the following message, to include Victim 7's sex which has been redacted from the affidavit:

**56586932367391@lid**

↘ Read
8/27/2025
6:29:13.000 PM

[redacted]
Age- 71

Black short sleeve shirt
gray long pants

h. At approximately 6:29PM, GOSWAMI replied to the above message with a thumbs up.

i. At approximately 6:36PM, GOSWAMI sent a picture of what appeared to be the car GPS showing him 1 minute away from the meet up location with Victim 7.

j. At approximately 6:38PM, GOSWAMI sent a picture of what appeared to be an empty parking lot.

k. At approximately 6:40PM, GOSWAMI sent a picture of what appeared to be Victim 7's vehicle parked in a parking lot.

l. At approximately 6:48PM and 6:54PM, an unknown user sent the following messages, which are consistent with the password "WATSON" gave Victim 7:



**56586932367391@lid** ↘ Read 8/27/2025 6:48:33.000 PM

Jerry

**56586932367391@lid** ↘ Read 8/27/2025 6:48:35.000 PM

Password

**56586932367391@lid** ↘ Read 8/27/2025 6:54:05.000 PM

Received

**56586932367391@lid** ↘ Read 8/27/2025 6:54:08.000 PM

Video

m. At approximately 6:54PM, GOSWAMI sent a video of a brown box. A screenshot of the video is below:



n. At approximately 7:36PM, GOSWAMI sent the following picture:



o. At approximately 7:37PM, GOSWAMI sent a video of the cash and appeared to be counting the cash in a foreign language. A screenshot from the video is below:




p. At approximately 7:43PM, an unknown user sent three texts that said "Box," "Open," and "Video."

q. At approximately 7:44PM, GOSWAMI replied "2 min."

r. At approximately 7:45PM, an unknown user sent a text that said "93500," which was the amount of cash Victim 7 said he/she gave to the first money mule.

s. At approximately 7:47PM, an unknown user sent a picture of cash and a message that said "3500."

t. At approximately 7:48PM, GOSWAMI sent a video of himself unboxing the package, which revealed an envelope inside the box. A screenshot from the video is below:



u. At approximately 7:52PM, an unknown user sent a message that said, "2 Journal Square Jersey City New Jersey 07306." An unknown user sent another message at approximately 8:40PM that included this address.

v. Between approximately 7:52PM and 11:52PM, GOSWAMI sent numerous pictures of what appeared to be a car GPS system in the group chat.

133. On or about August 28, 2025, the GROUP 1 WhatsApp group chat contained the following messages:

a. At approximately 12:17AM, an unknown user sent a message that said "Pochi Gaya bhai?" According to Google Translate, the message means "Have you arrived, brother?" in Gujarati.

b. At approximately 12:18AM, GOSWAMI sent a message that said, "Hao," which means "Yes" in Gujarati.

c. At approximately 12:24AM, an unknown user sent the following message:




134. On or about August 28, 2025, at approximately 12:24AM, GOSWAMI sent “Black Tiger” a picture of a $1 bill with the serial number D 33478283 D. Throughout this investigation, law enforcement has learned the money mules involved in this scheme use the serial numbers of $1 bills to confirm their identities with other co-conspirators in the scheme.

135. According to the records for BOA Account -6626, on or about August 28, 2025, GOSWAMI deposited approximately $4,500 in cash into an ATM in Jersey City, NJ.

**VICTIM 8**

136. Victim 8 was an 87-year-old resident of the SDNY.

137. Victim 8 filed a police report and gave a supporting deposition to a local police department, which was provided to IRS-CI. The facts in this section are based on the local police report, the supporting deposition provided by Victim 8, and a follow-up phone call with Victim 8 by IRS-CI.

138. On or about October 5, 2025, Victim 8 received a voicemail from an unknown individual who claimed they were a Walmart employee. The voicemail told Victim 8 that a Walmart business account had been opened in his/her name and approximately $2,000 had been charged to the account. Victim 8 called the number back to report the fraud and spoke

to an individual whom Victim 8 believed was a Walmart employee. Victim 8 followed up approximately a week later and was given another phone number to call. Victim 8 called that number and spoke with an individual claiming to be a Walmart investigator named "BRENDA." "BRENDA" suggested that Victim 8 contact "JIM PARIKH" ("PARIKH") at a particular number.

139. When Victim 8 called "PARIKH," "PARIKH" told Victim 8 that he/she was one of thirteen people whose personal information had been compromised and that it was being investigated by the FBI. Victim 8 had numerous conversations with "PARIKH" over the next few weeks *via* phone and text.

140. "PARIKH" told Victim 8 that he/she should liquidate financial assets and put them into a personal checking account to keep them safe. At "PARIKH's" instruction, Victim 8 liquidated stocks totaling approximately $430,000. "PARIKH" continued to call Victim 8 to check on the status of the transfers. Victim 8 advised "PARIKH" when the transfers were complete, which was on or about November 5, 2025.

141. "PARIKH" instructed Victim 8 to contact a specific gold shop to use the transferred funds to purchase gold. In accordance with "PARIKH's" instructions, Victim 8 sent two wires to the gold shop, the first for approximately $340,000 and the second for approximately $98,000.

142. After Victim 8 sent the first, approximately $340,000 wire to the gold shop, "PARIKH" instructed Victim 8 to contact the gold shop to tell them that another individual would be picking the coins up for Victim 8. "PARIKH" told Victim 8 that this individual was an FBI agent.

143. According to the gold shop owner, on or about November 10, 2025, the owner received permission from Victim 8 to allow another individual to pick up the gold for him/her. Local law enforcement subsequently determined that the individual who picked up Victim 8's gold was another victim in the same scheme and has lost a total of approximately $2,000,000.

144. After Victim 8 sent the second wire for approximately $98,000 to the gold shop, the gold was mailed to Victim 8's residence. "PARIKH" arranged for a money mule to pick up the gold coins and provided Victim 8 with a password. Victim 8 recalled the money mule provided the correct password at a location near Victim 8's residence, and Victim 8 provided the money mule with the gold.

145. In total, Victim 8 was scammed out of approximately $438,000.

146. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI and his co-conspirators were responsible for defrauding Victim 6.

147. Specifically, on or about November 25, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 10:38AM, an unknown user sent a message with Victim 8's zip code. Another unknown user replied with what appeared to be a GPS screenshot to Victim 8's city and zip code.

b. At approximately 12:10PM, an unknown user sent Victim 8's address.

c. Between approximately 12:00PM and 1:26PM, an unknown user sent a picture of what appeared to be a car GPS system. The final picture appeared to show the unknown user's location on the same road as Victim 8's home residence.

d. At approximately 2:03PM, an unknown user sent a message that included the color, make, and license plate of Victim 8's vehicle.

e. At approximately 2:13PM, an unknown user sent the following picture, which included Victim 8's city and zip code, which have been redacted from this affidavit:




f. At approximately 2:49PM and 2:54PM, different unknown users sent the following messages:




g. At approximately 2:54PM, an unknown user sent the following picture:




h. At approximately 3:17PM, the same user sent the following pictures:





i. At approximately 3:18PM, the same unknown user sent the following message. Based on my training and experience, as well as my knowledge of this investigation, I respectfully submit that this unknown user is letting the group know how much and what type of gold Victim 8 handed over to this money mule:




j. At approximately 3:18PM, the same unknown user sent four more pictures of what appeared to be the gold received from Victim 8.

**VICTIM 9**

148. Victim 9 was an 81-year-old resident of New Jersey.

149. In or around November 2025, Victim 9 received an email from what appeared to be Apple saying that Victim 9 was being charged $150 for a pornographic website. Victim 9 believed he/she was speaking with an individual at Apple who told Victim 9 that his/her identity had been stolen. Victim 9 was then put in touch with someone who claimed to be from the Federal Trade Commission (FTC) named "RONY CROSS" ("CROSS").

150. "CROSS" told Victim 9 that there was an investigation that would be finished by Christmas and everything had to be kept confidential. "CROSS" told Victim 9 that to protect his/her assets he/she would have to empty his/her bank accounts, purchase gold, and give the gold to "CROSS" to deposit at a secure government gold facility in Austin, Texas.

"CROSS" told Victim 9 that he/she would be compensated for keeping the gold at the facility. "CROSS" claimed to live in Washington, DC.

151. On two separate occasions, "CROSS" instructed Victim 9 to send a total of approximately $42,000 in bitcoin using a bitcoin ATM machine, which Victim 9 did.

152. After the bitcoin transactions, "CROSS" instructed Victim 9 to empty his/her Certificate of Deposit (CD) accounts and move the money to savings accounts to purchase gold. "CROSS" told Victim 9 where to go to purchase the gold.

153. Over the next four months, Victim 9 made approximately 13 different purchases of gold, totaling over $3,000,000.

154. "CROSS" instructed Victim 9 how much gold to buy each time and was on the phone each time Victim 9 purchased gold. The gold was shipped to Victim 9's residence, where Victim 9 would take the gold out of the box and send "CROSS" a picture of the gold and the receipts. "CROSS" would send money mules to pick the gold up from Victim 9 on the same day that Victim 9 received the gold.

155. According to Victim 9, the money mules were always male, spoke broken English, and would speak in different languages on the phone in front of Victim 9. Victim 9 said the money mules ranged from college-aged kids to early thirties.

156. The money mules would park in front of Victim 9's residence and he/she would walk out to the car. "CROSS" would tell Victim 9 the name of the money mule each time. The money mule would give Victim 9 a dollar bill to confirm their identity. Victim 9 would relay the serial number to "CROSS" to make sure it matched his records. Once "CROSS"

confirmed the money mule's identity, Victim 9 would repackage the gold, take it outside to the money mule, and place it on the passenger seat of the money mule's vehicle. The money mules would typically stay inside the vehicle.

157. Victim 9 gave the final shipment of gold to the money mules in or around mid-March. Shortly afterward, New Jersey State Police came to Victim 9's residence to inform Victim 9 that he/she was the victim of fraud.

158. Law enforcement's review of GOSWAMI's SUBJECT CELL PHONE revealed evidence that GOSWAMI was one of the money mules who took gold from Victim 9.

159. Specifically, on or about December 8, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 4:40PM, an unknown user sent Victim 9's zip code.

b. At approximately 4:53PM, 5:16PM, and 5:18PM, GOSWAMI sent what appeared to be pictures of a car GPS system. In the second and third pictures, Victim 9's city was shown as the exit GOSWAMI was going to get off at.

c. At approximately 5:18PM and 5:19PM, an unknown user sent a message that was Victim 9's address.

d. At approximately 5:19PM, an unknow user sent the following message that included Victim 9's name, address, and sex, all of which have been redacted from this affidavit:

**56586932367391@lid** ↘ Read
12/8/2025
5:19:32.000 PM

Customer Name : [redacted]
Customer Address [redacted]
Customer Age :80
Customer Sex [redacted]
Customer Dress Colour :Blue tops grey pants wearing glass short hair
Amount : 50 Oz

e. At approximately 5:29PM, GOSWAMI sent the following image:



f. At approximately 5:30PM, an unknown user sent a message saying "video" and another message saying "360."

g. At approximately 5:30PM, GOSWAMI sent a video of the box. A screenshot of the video is below:



h. At approximately 5:36PM, GOSWAMI sent another video opening the box and counting the gold inside. A screenshot from the video is below:



i. At approximately 5:37PM, an unknown user sent a message that said "pic."

j. At approximately 5:37PM, GOSWAMI sent the following pictures:





k. At approximately 5:42PM, an unknown user sent the following messages. Based on my training and experience, I respectfully submit this unknown user was telling GOSWAMI where to bring the gold:



56586932367391@lid ↘ Read 12/8/2025 5:42:01.000 PM
2750 Tonnelle Ave North Bergen NJ

56586932367391@lid ↘ Read 12/8/2025 5:42:05.000 PM
Tokon

56586932367391@lid ↘ Read 12/8/2025 5:42:08.000 PM
Add eta

l. Between 5:44PM and 6:28PM, an unknown user sent multiple messages saying "Map" and, in response, GOSWAMI sent numerous pictures of what appeared to be a car GPS system. Additionally, GOSWAMI sent multiple pictures that appeared to be outside of a residence.

m. At approximately 6:29PM, an unknown user sent a message that said "car" and GOSWAMI replied "Silver jetta." The unknown user then said "5 min."

n. At approximately 6:33PM, GOSWAMI sent two messages that said "FL" and "License plate."

160. Records from BOA Account -6626 showed that, on or about December 9, 2025, GOSWAMI deposited approximately $960 in cash into an ATM in Jersey City, NJ.

161. On or about December 9, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 4:46PM, an unknown user sent Victim 9's zip code.

b. At approximately 4:47PM, GOSWAMI replied with what appeared to be a screenshot of a GPS system with GOSWAMI's current location to Victim 9's zip code.

c. At 4:47PM and 4:55PM, an unknown user sent two pictures of what appeared to be a car GPS system.

d. At approximately 4:55PM and 4:57PM, another unknown user sent Victim 9's address. That same user sent a message saying "Map."

e. Between approximately 4:59PM and 5:16PM, the unknown user that previously sent pictures of what appeared to be a car GPS system, sent multiple additional pictures of what appeared to be a car GPS system.

f. At approximately 5:17PM, an unknown user sent the following messages, which included Victim 9's name, address, and sex, all of which have been redacted from this affidavit. Based on my training and experience, I respectfully submit that the unknown user is telling the money mule the name to tell Victim 9:

↘ Read
**56586932367391@lid** 12/9/2025 5:17:05.000 PM

Customer Name : [redacted]
Customer Address : [redacted]
Customer Age :80
Customer Sex [redacted]
Customer Dress Colour :pink top grey pants wearing glass short hair
Amount : 20 Oz

↘ Read
**56586932367391@lid** 12/9/2025 5:17:06.000 PM

Runner name: Daniel

g. At approximately 5:51PM, an unknown user sent the following message:

↘ Read
**56586932367391@lid** 12/9/2025 5:51:47.000 PM

Received

h. At approximately 5:53PM, an unknown user sent a video of what appeared to be the box given to the money mules by Victim 9. A screenshot of the video is below:



i. At approximately 6:05PM, the same user sent another video opening the box and taking out gold. A screenshot from the video is below:



162. On or about December 16, 2025, the GROUP 5 WhatsApp group chat contained the following messages:

a. At approximately 10:52AM, an unknown user sent a message with Victim 9's zip code and "New Jersey."

b. At approximately 10:56AM, GOSWAMI sent a picture of what appeared to be a screenshot of a GPS system with GOSWAMI's current location to the zip code of Victim 9.

c. At approximately 11:15AM, GOSWAMI sent what appeared to be a picture of a car GPS system.

d. At approximately 11:15AM, an unknown user sent the following message, which included Victim 9's name, address, and sex, all of which have been redacted from this affidavit:




e. At approximately 11:18AM, the same unknown user as before, sent a message with Victim 9's home address.

f. Between approximately 11:25AM and 11:48AM, GOSWAMI sent multiple pictures of what appeared to be a car GPS system.

g. At approximately 12:02PM, GOSWAMI sent a video of a brown box. A screenshot of the video is below:



h. At approximately 12:05PM, GOSWAMI sent another video of him opening the box and taking out the gold inside. A screenshot from the video is below:



i. At approximately 12:05PM, GOSWAMI sent a message that said, "70 oz received." 70 ounces was the amount specified by the unknown user as discussed in letter D, which included Victim 9's information.

j. Between 12:06PM and 12:08PM, GOSWAMI sent multiple pictures of what appeared to be the gold that GOSWAMI picked up from Victim 9. Two of the images are below:







163. Records for BOA Account -6626 show that, on or about December 18, 2025, GOSWAMI deposited approximately $2,100 in cash into an ATM in Jersey City, NJ.

**<u>NJSP SURVEILLANCE OF GOSWAMI</u>**

164. In or around the week of March 15, 2026, NJSP conducted physical surveillance at Victim 9's residence. Shortly after surveillance was established, a white-colored sedan (hereinafter the "TARGET VEHICLE") was observed arriving at the residence. NJSP officers observed Victim 9 exit the residence, walk down the driveway

carrying a cardboard box, approach the passenger side of the vehicle, and after a brief conversation with the occupants transfer the cardboard box into the vehicle. Victim 9 then returned to the residence. NJSP subsequently identified GOSWAMI as the passenger in the vehicle.

165. NJSP observed GOSWAMI and the other occupant in the TARGET VEHICLE go to a Kohl's parking lot in Clifton, NJ where they parked alongside three other vehicles. An individual (hereinafter "SUBJECT 1") carrying a black-colored backpack walked toward the TARGET VEHICLE and GOSWAMI exited the passenger door. GOSWAMI and SUBJECT 1 were observed conversing and approaching the other vehicles parked near the TARGET VEHICLE.

166. After approaching the various vehicles in the parking lot, GOSWAMI and SUBJECT 1 entered the TARGET VEHICLE. SUBJECT 1 eventually exited the TARGET VEHICLE after a brief period of time with the black-colored backpack that appeared heavier than when SUBJECT 1 initially approached.

167. NJSP subsequently effected a motor vehicle stop of the vehicle SUBJECT 1 was operating. SUBJECT 1 was placed under arrest. A search of the vehicle revealed SUBJECT 1 to be in possession of approximately $727,711.50 worth of gold and approximately $28,072 in United States currency.

168. This occurred after NYSP arrested GOSWAMI in December 2025 and advised him that he was engaged in fraud and taking cash and gold from victims.

## ANALYSIS OF BOA ACCOUNT -6626

169. Based on my training and experience, I know that perpetrators involved in elder fraud schemes often direct victims to withdraw funds in the form of cash from their bank accounts and/or direct victims to purchase gold using cash, wire transfers, or checks in an attempt to conceal the true nature, source and location of the funds. In addition, the perpetrators of elder fraud schemes arrange for money mules to pick up the cash or gold from the victims to deliver to other members of the conspiracy, in an effort to conceal the true nature, source and location of the funds. This movement of funds is designed to conceal and disguise the proceeds, making it difficult for law enforcement to trace the origin and final disposition of the assets.

170. BOA records show that GOSWAMI opened BOA Account -6626 on or about January 31, 2024. BOA account -6626 is an individual owner checking account. The account title is in the name of GOSWAMI.

171. BOA Account -6626 records show that, between on or about August 1, 2025, and on or about April 6, 2026, GOSWAMI made over approximately $90,000 in cash deposits. There were no other sources of income into BOA Account -6626. My analysis showed that GOSWAMI made the following cash deposits into BOA Account -6626 between on or about August 1, 2025, and on or about April 6, 2026:

| Account Number | Credit Amount (Approximately) | Description |
|---|---|---|
| -6626 | $4,700.00 | BKOFAMERICA ATM 08/08 #000001952 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |
| -6626 | $2,000.00 | BKOFAMERICA ATM 08/16 #000001195 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |

| | | |
|---|---|---|
| -6626 | $1,050.00 | BKOFAMERICA ATM 08/22 #000009182 DEPOSIT JOURNAL SQUARE BC JERSEY CITY NJ |
| -6626 | $4,500.00 | BKOFAMERICA ATM 08/28 #000009834 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |
| -6626 | $5,758.00 | BKOFAMERICA ATM 09/03 #000003311 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |
| -6626 | $3,000.00 | BKOFAMERICA ATM 09/11 #000006618 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |
| -6626 | $3,500.00 | BKOFAMERICA ATM 09/19 #000009570 DEPOSIT JOURNAL SQUARE BAN JERSEY CITY NJ |
| -6626 | $1,700.00 | BKOFAMERICA ATM 09/22 #000001390 DEPOSIT JOURNAL SQUARE BC JERSEY CITY NJ |
| -6626 | $4,000.00 | BKOFAMERICA ATM 09/29 #000004624 DEPOSIT JOURNAL SQUARE JERSEY CITY NJ |
| -6626 | $5,030.00 | BKOFAMERICA ATM 10/04 #000005953 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $600.00 | BKOFAMERICA ATM 10/08 #000006663 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $3,300.00 | BKOFAMERICA ATM 10/12 #000007917 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $3,900.00 | BKOFAMERICA ATM 10/16 #000009825 DEPOSIT TEANECK PALISADE TEANECK NJ |
| -6626 | $1,100.00 | BKOFAMERICA ATM 10/16 #000009828 DEPOSIT TEANECK PALISADE TEANECK NJ |
| -6626 | $200.00 | BKOFAMERICA ATM 10/19 #000008240 DEPOSIT OLD BERGEN JERSEY CITY NJ |
| -6626 | $3,400.00 | BKOFAMERICA ATM 10/25 #000007972 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $4,851.00 | BKOFAMERICA ATM 11/01 #000005778 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $1,320.00 | BKOFAMERICA ATM 11/08 #000007115 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $12,840.00 | BKOFAMERICA ATM 11/10 #000007737 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $500.00 | BKOFAMERICA ATM 11/10 #000004415 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $1,150.00 | BKOFAMERICA ATM 11/15 #000006007 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $3,100.00 | BKOFAMERICA ATM 11/23 #000004596 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $2,170.00 | BKOFAMERICA ATM 11/27 #000005690 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |

| | | |
|---|---|---|
| -6626 | $800.00 | BKOFAMERICA ATM 12/04 #000002893 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $4,000.00 | BKOFAMERICA ATM 12/06 #000008377 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $960.00 | BKOFAMERICA ATM 12/09 #000009249 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $4,000.00 | BKOFAMERICA ATM 12/15 #000002287 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $2,100.00 | BKOFAMERICA ATM 12/18 #000007260 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $2,500.00 | BKOFAMERICA ATM 03/13 #000003893 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $1,172.00 | BKOFAMERICA ATM 03/25 #000007485 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| -6626 | $1,100.00 | BKOFAMERICA ATM 04/04 #000004305 DEPOSIT CENTRAL AVENUE JERSEY CITY NJ |
| | $90,301.00 | APPROXIMATE TOTAL |

172. Based on my training, experience, and knowledge of this investigation, I respectfully submit that the timing, amounts, and nature of the above-listed cash deposits into BOA Account -6626 are consistent with GOSWAMI receiving compensation for acting as a money mule in the above-described fraudulent scheme.

## CONCLUSION

173. Based on the foregoing, I respectfully submit that there is probable cause to believe that GOSWAMI committed the TARGET OFFENSES.

Brendan Miller

Brendan Miller
Special Agent
Internal Revenue Service, Criminal Investigation

Affidavit submitted electronically by email in .pdf format. Oath administered and contents and signature attested to me and before me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 13th day of August 2026.

Colleen D. Holland

HON. CO‾ ‾EE‾ ‾ ‾. HOL‾ ‾ND
UNITED STATES MAGISTRATE JUDGE